POOLER, Circuit Judge,
dissenting:
I concur in the majority opinion in its statements of the controlling law and conclusions in Parts I, III, IV, and V. I respectfully dissent however, as to Part II, because I believe that the majority incorrectly applies the standard for cases involving an individual Title VII violation to this pattern'-or-practice case. By requiring the City merely “to articulate some legitimate, nondiscriminatory reason” for the adverse action as set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 98 S.Ct. 1817, 36 L.Ed.2d 668 (1973), rather than demand it “demonstrat[e] that the
[plaintiffs] proof is either inaccurate or insignificant” as required by International Brotherhood of Teamsters v. United States (Teamsters), 431 U.S. 324, 360, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the majority conflates the two distinct tests set out in our disparate treatment jurisprudence.[1]
I. Two Different Burden-Shifting Frameworks: McDonnell Douglas and Teamsters
The Supreme Court has “devised a series of shifting evidentiary burdens” for the different types of disparate treatment claims under Title VII “that are intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.” Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (internal citation and quotation marks omitted). In McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817, the Court set out the burdens for individual claims, and in Teamsters, 431 U.S. at 336, 97 S.Ct. 1843, it established the analysis for pattern-or-practice claims. See Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 157 n. 3 (2d Cir.2001). “The McDonnell Douglas and Teamsters frameworks differ in important respects.” Reynolds v. Barrett, 685 F.3d 193, 204 (2d Cir.2012). Although their structures are essentially the same, “the content of the specific stages” of these frameworks are “different.” Coates v. Johnson & Johnson, 756 F.2d 524, 532 (7th Cir.1985). These differences exist to ad *102 dress the distinct purposes of the separate types of claims.
Individual suits aim to uncover discrimination where a plaintiff “has been subjected to ‘disparate treatment’ because of his race.” Furnco Constr. Corp v. Waters, 438 U.S. 567, 582, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1979) (Marshall, J., concurring in part, dissenting in part). Under the McDonnell Douglas framework the individual plaintiff is required to show that “(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination.” Ruiz v. Cnty. of Rockland, 609 F.3d 486, 492 (2d Cir.2010); see also McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff establishes its prima facie case, the burden then shifts to the employer who need only “articulate some legitimate, nondiscriminatory reason for the employee’s rejection.” McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If the employer is able to satisfy that burden, the inquiry then returns to the plaintiff, to demonstrate that the proffered reason is a pretext for discrimination. Id. at 804, 93 S.Ct. 1817.
In contrast, the Supreme Court announced in Teamsters that “pattern-or-practice” claims brought under Section 707 of Title VII[2] aim to thwart widespread procedures that fall harshly on one racial group rather than mere isolated instances. Teamsters, 431 U.S. at 336 n. 16, 97 S.Ct. 1843. Unlike McDonnell Douglas, the plaintiff must make a prima facie showing of pattern-or-practice under Teamsters “that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.” Teamsters, 431 U.S. at 360, 97 S.Ct. 1843. If the plaintiff meets its initial burden, the employer must then “defeat” that showing by “demonstrating that the Government’s proof is either inaccurate or insignificant." Id. (emphasis added). If the employer fails to satisfy its burden of production, the suit then concludes the liability phase and enters the remedial phase. Id. at 361, 97 S.Ct. 1843. If the defendant satisfies the burden of production, the district court “must then determine, by a preponderance of the evidence, whether the employer engaged in a pattern or practice” in order for it to “fashion class-wide injunctive relief.” Reynolds, 685 F.3d at 203 (internal quotation marks and citations omitted).
Teamsters’ detailed scheme differs from that of McDonnell Douglas in two important respects with regards to this case. First, unlike a plaintiff bringing an individual claim under McDonnell Douglas, a plaintiff establishing a prima facie case of pattern-or-practice is often required to use statistics. Id. at 339, 97 S.Ct. 1843 (stating statistics have and will continue to serve an important role in pattern-or-practice cases); see also Robinson, 267 F.3d at 157 n. 3. Second, in a pattern-or-practice case governed by Teamsters, the defendant must also satisfy a more difficult burden by responding to the plaintiffs’ prima facie case. Thus, where a plaintiff used statistical evidence to prevail, a Teamsters defendant may not merely “articulate some legitimate, nondiscriminatory reason” for the alleged discrimination, as required under McDonnell Douglas, 411 *103 U.S. at 802, 93 S.Ct. 1817, instead the employer must “meet” the Government’s proof, Teamsters, 431 U.S. at 360 n. 46, 97 S.Ct. 1843, by demonstrating the plaintiffs statistics were inaccurate or insignificant. Id. at 360, 97 S.Ct. 1843.[3] Thus, the burdens of proof for both plaintiff and defendant are heavier under Teamste/ [4]
To understand the reasoning underlying Teamsters’ more demanding standards for plaintiffs and defendants, in comparison to that under McDonnell Douglas, we need only observe the separate types of discrimination they aim to end. In an individual claim, the targeted behavior involves instances of discrimination against a particular plaintiff. Reynolds, 685 F.3d at 203-04. Thus, statistical evidence is not necessary or, in fact, helpful in establishing these particular occurrences. Id.; see also Hudson v. Int’l Bus. Mach. Corp., 620 F.2d 351, 355 (2d Cir.1980). In general, the plaintiffs prima facie burden under McDonnell Douglas has been characterized as “not onerous.” Tex. Dep’t of Cmty.
Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Similarly, a McDonnell Douglas defendant’s burden is less demanding—being able to merely present a legitimate neutral reason—where there are no statistics to controvert. For example, it is sufficient if the defendant’s evidence simply sets forth “the reasons for the plaintiffs rejection.” Id. at 255, 101 S.Ct. 1089.
In contrast, the “essence” of pattern-or-practice claims is different because they aim to end discrimination of a different kind. These claims address cases where “the employer treated all members of the class in the same way,” so “the manner of proving [and defeating] the claim usually relies heavily on statistical evidence, bolstered as necessary with anecdotal evidence.” 1 Arthur Larson et al., Employment Discrimination § 8.02, at 8-15 (2d ed.2012) (hereinafter “Larson”). As the Supreme Court underscored in Teamsters, statistical evidence is often necessary in *104 proving pattern-or-practice cases because plaintiffs must prove more than mere “sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant’s ‘standard operating procedure.’ ” Robinson, 267 F.3d at 158 (quoting Teamsters, 431 U.S. at 336, 97 S.Ct. 1843). Once the plaintiff has used statistical evidence to make out its prima facie case, the employer must then “defeat the prima facie showing” by addressing those statistics. Teamsters, 431 U.S. at 360, 97 S.Ct. 1843. Although there are no “limits on the type of evidence an employer may use,” because the employer must “meet” the plaintiffs case and demonstrate that it is inaccurate or insignificant, id. at 360 n. 46, 97 S.Ct. 1843, if statistics were used, those statistics must necessarily be addressed.
The Teamsters burden on the employer is carefully calibrated to identify widespread discriminatory acts; thus, an employer’s noncompliance with this test is an attempt to evade its purposes. The burden shifting framework “ ‘is a procedural device, designed ... to establish an order and proof of production,’ and, like other procedural rules, [it] subjects noncompliant parties to default regardless of the objective merit of their claims or defenses.” Dist. Ct. Op. at 36 (quoting St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 522, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original)). Similarly, as it fails to address the pattern-or-practice concerns, using the “ill-suited” McDonnell Douglas pattern of proof is likewise inappropriate. Robinson, 267 F.3d at 157 n. 3 (quoting 1 Arthur Larson et ah, Employment Discrimination § 8.01[4], at 8-13 (2d ed.2001)). As one Court put it: “In a complex class action, utilizing statistical proof and counterproof, the value of the [.McDonnell Douglas ] sequence—-to highlight the issues in contrast—is about as relevant as a minuet is to a thermonuclear battle.” Vuyanich v. Republic Nat’l Bank, 521 F.Supp. 656, 661 (N.D.Tex.1981), vacated on other grounds, 723 F.2d 1195 (5th Cir.1984). Thus, an employer who attempts to displace the Teamsters requirement with McDonnell Douglas proof must fail.
Courts have continuously acknowledged these differences between Teamsters and McDonnell Douglas. For example, the year following its opinion in Teamsters, the Supreme Court reiterated the distinction between McDonnell Douglas and Teamsters in Title VII cases. Waters, 438 U.S. at 575, 98 S.Ct. 2943. In Waters, a suit brought by three individuals the Court found that it was necessary to apply the “approach ... contained in McDonnell Douglas ” because it “was not a ‘pattern or practice’ case like Teamsters v. United States....” Id. at 575 & n. 7, 98 S.Ct. 2943; see also Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (distinguishing Teamsters and McDonnell Douglas in a case contemplating additional proceedings to determine the scope of individual relief).
This Circuit has authoritatively held that Teamsters establishes the approach for pattern-or-practice cases, distinct from that of McDonnell Douglas.[5] In Robinson, this Circuit enunciated that “Title VII *105 disparate treatment claims are of two types,” either individual claims to be analyzed under McDonnell Douglas or pattern-or-practice claims brought under Teamsters. Reynolds, 685 F.3d at 202 (citing Robinson, 267 F.3d at 157 n. 3). We have since reiterated Robinson’s holding that Teamsters established the distinct test for pattern-or-practice claims in subsequent cases. See Reynolds, 685 F.3d at 202; Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 146-50 (2d Cir.2012). Lower courts in this Circuit have also diligently adopted our approach, see, e.g., Lomotey v. Conn., Dep’t of Transp., 2012 WL 642763, at *12 (D.Conn. Feb. 28, 2012) (stating that Teamsters is distinguishable from McDonnell Douglas framework); EEOC v. Bloomberg L.P., 778 F.Supp.2d 458, 468 (S.D.N.Y.2011) (same); United States v. N.Y.C. Transit Auth., 2010 WL 3855191, at *23 (E.D.N.Y. Sept. 28, 2010) (applying Teamsters to this pattern-or-practice case and stating that “the McDonnell Douglas framework does not apply in Section 707 cases”); United States v. City of New York, 631 F.Supp.2d 419, 427 (S.D.N.Y.2009) (collecting cases for the proposition that individuals cannot bring pattern-or-practice cases), and at least one other Circuit has recognized Robinson’s change to our law, see, e.g., Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 179 n. 11 (3rd Cir.2009) (noting that more recently “courts of appeals have used the Teamsters two-stage framework to analyze pattern-or-practice claims brought as private-plaintiff class actions under Title VII” and citing to Robinson, 267 F.3d at 158-60).
In addition to recognizing these general differences, this Court went even further in Reynolds v. Barrett and underscored that Robinson also adopted one of the most predominant differences between the tests: unlike the McDonnell Douglas burden-shifting framework, the employer under Teamsters must “show that the statistical evidence proffered by the plaintiffs is insignificant or inaccurate.” Reynolds, 685 F.3d at 203. “Typically, this is accomplished by challenging the source, accuracy, or probative force of the plaintiffs’ statistics.” Id. (internal quotation marks and citation omitted). Thus, the “prudent defendant will follow all three routes if possible, presenting its own version of the numbers game, attempting to undermine the plaintiffs’ version with specific attacks on the validity of the plaintiffs’ statistics, and garnering non-statistical evidentiary support as well.” Robinson, 267 F.3d at 159 (internal citation and alterations omitted).
Robinson thus emphasized the two differing aspects of the employer’s burden under Teamsters that are at issue today. First, the requirement that the employer show “insignificance or inaccuracy” is a much more difficult bar than merely proffering some non-pretextual reason for discrimination as required by McDonnell Douglas. Second, also unlike McDonnell Douglas, this more difficult task under Teamsters must often be achieved by responding to the plaintiffs statistical proof. In essence, there is a statistical bind inherent in pattern-or-practice cases. Because the plaintiffs proof will often be composed of statistics, and the employer must “demonstrate] that the [prima facie] proof is either inaccurate or insignificant,” Teamsters, 431 U.S. at 360, 97 S.Ct. 1843, the employer is often required to defeat the plaintiffs statistical evidence.[6]
*106 Consistent with our interpretation in Robinson and Reynolds, our sister Circuits have similarly upheld Teamsters’ distinct analysis. Indeed, every Circuit, save the First and Federal Circuits, has decided eases specifically quoting that the employer’s burden under Teamsters is to demonstrate that the plaintiffs offered proof is “inaccurate or insignificant.” See Hohider, 574 F.3d at 177-78; Morgan v. United Parcel Serv. of Am., Inc., 380 F.3d 459, 463-64 (8th Cir.2004); Beck v. Boeing Co., 60 Fed.Appx. 38, 39 (9th Cir.2003); Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1106 (10th Cir.2001); EEOC v. Joe’s Stone Crab, Inc., 220 F.3d 1263, 1287 n. 22 (11th Cir.2000); Anderson v. Douglas & Lomason Co., 26 F.3d 1277, 1285 (5th Cir.1994); EEOC v. Sears, Roebuck & Co., 839 F.2d 302, 308 (7th Cir.1988); Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir.1986); Segar v. Smith, 738 F.2d 1249, 1300-01 (D.C.Cir.1984); Alexander v. Aero Lodge No. 735, Int’l Ass’n of Machinists and Aerospace Workers, 565 F.2d 1364, 1382 n. 11 (6th Cir.1977), superceded by statute on other grounds.
II. The District Court Correctly Applied Teamsters
Thus, adhering to this unanimous recognition of Teamsters by this Circuit and others, the district court in this case faithfully applied the distinct pattern-or-practice test and found the City did not meet its more difficult burden. To begin its discussion, the district court announced that the Intervenors clearly met their burden by presenting “sufficient undisputed statistical evidence to support a prima facie case that the City had a pattern or practice of discriminating against black applicants.” Dist. Ct. Op 28-29.[7] Not only did the statistics bear out that the City’s use of its two Exams on a pass/fail basis and the rank order processing yielded “statistically significant adverse effects on black candidates,” id. at 29, but the Intervenors also “supplemented their statistical showing with extensive historical, anecdotal, and testimonial evidence that the intentional discrimination was the City’s standard operating procedure” for several decades, id. at 31 (internal quotation marks omitted).
Finding the prima facie burden had been met, the district court then moved on to the Teamsters requirement enunciated in Robinson that “the City bears the burden of ‘demonstrating that the [Intervenors’] proof is either inaccurate or insignificant’ by attacking its ‘source, accuracy, or probative force.’ ” Id. at 33 (citing Robinson, 267 F.3d at 159). Having failed to “dispute either the accuracy or practical significance of Plaintiffs’ statistical analyses,” id. at 7, the district court found the City to have “abjured [its Teamsters ] responsibility entirely,” id. at 33. The court stated, “[t]he City has not offered a com *107 peting ‘statistical summary treatment of the protected class,’ has not attempted to undermine the Intervenors’ statistics with ‘specific attacks on their validity,’ and has garnered no ‘anecdotal or other non-statistical evidence tending to rebut the inference of discrimination.’ ” Id. (internal alterations and citations omitted). Thus, despite Robinson's, suggestion that “the prudent defendant will follow all three routes,” 267 F.3d at 159 (internal citation omitted), here, the lower court correctly found that the City attempted to “circumvent its burden of production entirely.” Dist. Ct. Op. at 33.
Rather than responding to the statistical evidence, the City only “argufed] that the Intervenors ha[d] not proved that the City harbored a subjective intent to discriminate against black applicants.” Id. In essence, the City ignored the inevitable conclusion of the statistics and tried to focus on intent. But, “[a]t this stage, lack of direct proof regarding the employer’s mental state is simply immaterial to the question of whether the City can rebut the presumption of unlawful discrimination created by the Intervenors’ prima facie showing.” Id. at 37. Despite the City’s correct assertion that what “actually motivate[s] the employer’s decision” is relevant, Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), departure from the Teamsters framework is “fatal” where the motivation did not address the statistical evidence. Dist. Ct. Op. at 35.
In the face of the district court’s faithful application of the law, the majority not only overrules that well-reasoned decision but also confuses the distinct pattern-or-practice standard by incorrectly conflating the employer’s burden in Teamsters with the one set out in McDonnell Douglas. See Maj. Op. at 84-85. While the majority asserts that the City need only provide “a nondiscriminatory explanation” under Teamsters, id. at 84, 85-86, 88, I think the City was required both under the law of this Circuit and the Supreme Court to show more. At the outset, the majority recognizes that “[i]n a pattern-or-practice case, the plaintiffs initial burden is heavier,” id. at 84, however, it fails to recognize that a similarly heavy burden also exists for the defendant-employer under Teamsters.
III. The Majority Failed to Notice Teamsters’ “Insignificant or Inaccurate” Burden is Higher than that in McDonnell Douglas.
First, the majority incorrectly tries to pare down the employer’s higher bar in Teamsters to the one set out in McDonnell Douglas. Under Teamsters, the employer may only satisfy its heavy burden if its defense “meet[s] the prima facie case” and proves it is “insignificant or inaccurate.” Teamsters, 431 U.S. at 360 n. 46, 97 S.Ct. 1843. The majority tries to evade Teamsters’ more difficult “insignificant or inaccurate” burden by characterizing the language in Reynolds as dictum. Maj. Op. at 86-87 n. 14. I find this characterization confounding. There is no reasonable reading of Reynolds, which can classify this language as dicta, especially because, as the majority admits, the Supreme Court in Teamsters clearly stated that the employer has the burden to “defeat” the prima facie case. Id. at 84-85. The employer’s burden to defeat the prima facie case as insignificant or inaccurate can certainly not be said to be the same as McDonnell Douglas’ requirement that the employer simply rebut the plaintiffs evidence with the offer of a nondiscriminatory reason. Still, the majority tries to lessen Teamsters’ more stringent language by stating that although “ ‘[djefeat’ might be thought to imply something stronger than [McDonnell Douglas’ requirement to] ‘rebut,’ ” the *108 Court’s language “means the same thing in both contexts.” Id. at 84. This argument clearly disregards the plain language of not only Teamsters, but also the law of this Circuit that is binding on subsequent panels. Not only were the separate meanings of “defeat” and “rebut” intended by the Supreme Court’s separate use of these two distinct words, but the separate meanings are underscored in the different standards requiring a demonstration that the plaintiffs proof is “inaccurate or insignificant” versus showing some neutral legitimate reason.[8]
Additionally, the majority tries to convince us a lower bar can be met by quoting Teamsters’ recitation of the McDonnell Douglas’ standard. Insofar as stating that Teamsters may recognize the McDonnell Douglas standard is relevant, the majority is in fact correct. Teamsters does state that the employer may “provid[e] a nondiscriminatory explanation for the apparently discriminatory result.” Id. at 84-85. However, Teamsters does not state this will fully satisfy the employer’s duty to meet the “inaccurate or insignificant” standard. As explained by the D.C. Circuit,
[t]he bare articulation of a nondiscriminatory explanation, while sufficient to rebut an individual plaintiffs low-threshold McDonnell Douglas showing, generally will not suffice as a rebuttal to a typical class-wide showing of pervasive discrimination.... in both individual and class action contexts the defendant faces the same rebuttal burden; it must present sufficient evidence to permit the trier of fact to decline to draw the inference of discrimination from the plaintiffs’ proof. But in the class action pattern or practice case the strength of the evidence sufficient to meet this rebuttal burden will typically need to be much higher than the strength of the evidence sufficient to rebut an individual plaintiffs low-threshold McDonnell Douglas showing.
Segar, 738 F.2d at 1269-70 (discussing applicability of Teamsters as opposed to McDonnell Douglas to pattern-or-practice claims). In other words, the majority ignores the fact that in cases with substantial statistical proof in the prima facie case, a McDonnell Douglas offering of a nondiscriminatory reason will not satisfy the employer’s burden under the higher Teamsters bar. See Hazelwood School Dist. v. United States, 433 U.S. 299, 308-12, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977) (detailing how alternate statistics were necessary to rebut statistical prima facie showing). Instead, the McDonnell Douglas standard is relevant only to the extent that Teamsters encompasses McDonnell Douglas, but Teamsters’ burden still requires more beyond it.
IY. The Majority Failed to Recognize Teamsters’ Method of Proof is More Difficult than McDonnell Douglas’
In addition to paring down the employer’s burden under Teamsters, the majority also inaccurately describes the method of proof required. The majority is correct that Teamsters states the employer’s proof need not be limited to statistics alone. However, as previously explained, because pattern-or-practice suits usually focus on widespread discrimination, statistics will *109 often be necessary to make such a case.[9] Where a plaintiff presents such evidence as part of its prima facie case, Teamsters requires the employer to counter with a different method of proof than that which would be sufficient under McDonnell Douglas; it requires the employer to address the cold hard numbers. Larson, § 9.03[2][a], at 9-18 to -19.
The majority disagrees. It admits the passage from Larson stating, the employer has three avenues of attack to challenge “the plaintiffs statistics,” quoted by this Court in Robinson, “might be thought to require an employer to challenge the plaintiffs statistics,” but the majority abandons that interpretation. Maj. Op. at 86. Instead, the majority cites to the portion of Larson’s treatise, which states that a defendant may use “other non-statistical evidence tending to rebut the inference of discrimination.” Id. As stated above, this quotation does not present a contradiction; while use of non-statistical evidence is relevant, it is often not sufficient if it does not meet the prima facie evidence. Although Larson’s treatise goes on to state, in a section called “Other Rebuttal Techniques,” that one Seventh Circuit case found exclusive non-statistical evidence of “an employer’s affirmative action efforts” may be relevant, Larson, § 9.03[2][c], at 9-20.1, this case is atypical. Larson’s presentation of this case as an exception suggests that the defendant’s rebuttal burden will often not be sufficient unless it defeats the plaintiffs statistical evidence or at the very minimum attacks those statistics. See Larson, § 9.03[2][a], [b],
As Larson states, defendant’s burden is to “come forward with evidence sufficient to rebut the prima face case based on statistics.” Larson, § 9.03[2], at 9-16. This means the employer’s rebuttal will often be composed of targeting “flaws in the plaintiffs [statistical] evidence.” Larson, § 9.03[2][a], at 9-17. In fact, Larson goes even further and states that the Supreme Court’s decision in Bazemore v. Friday, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), has “been interpreted to imply that the defendant must do more than merely point out possible flaws in the plaintiffs statistical analysis, the defendant must also show that consideration of the missing factors would make a difference in the analytical outcome.” Larson, § 9.03[2][b], at 9-19. Thus, the defendant is often required to “present! ] its own statistics to the court” which “a defendant will wish to argue ... are more ‘finely tuned’ and have more probative force because they take into consideration a variety of relevant factors that the plaintiffs statistics ignore.” Larson, § 9.03[2][b], at 9-19.
In addition to arguably misinterpreting Professor Larson’s treatise, the majority disregards this Circuit’s actual case law by claiming Reynolds’ language on the method of proof, recognized in Robinson, is “dictum.” Maj. Op. at 86-87 n. 14. Moreover, the majority looks over the logical conclusion in Robinson and Reynolds that statistics are not always but often required because “[statistics proffered during the ‘liability phase’ of a pattern-or-practice suit purport to demonstrate that a *110 pattern of discrimination exists at an entity.” Reynolds, 685 F.3d at 204 (emphasis in original). As the Court stated, “In a Title VII ease, these statistics can make out a prima facie case that the employer was engaged in a pattern or practice of discrimination. This is because [statistics or] an analysis of the collective acts of those who do the employer’s bidding bespeak the employer’s motivation.” Id.
This Court’s prescriptions in Robinson and Reynolds acknowledge the most “basic” or common situation that the rebuttal will be statistical—not because they have misread Teamsters as stating the evidence must be exclusively statistical but because statistics will most often be necessary for the plaintiff to show the entity engaged in a pattern-or-practice. Teamsters, 431 U.S. at 339-40 n. 20, 97 S.Ct. 1843. Thus, as stated by Larson in his treatise, non-statistical proof may be relevant to disproving those statistics but it most often will not be sufficient. See Larson, § 9.03[2][a], [b], at 9-16 to -20. Regardless, whatever the plaintiffs proof is—statistical or otherwise—if the defendant does not show that proof to be inaccurate or insignificant it has not carried its burden of proof and summary judgment must be granted in favor of the plaintiffs.
In undermining our easelaw on the employer’s method of proof, the majority also ignores the law of our sister Circuits that have held the same rule. It is well recognized among other Circuits that the employer must defeat the Government’s statistical proof. See Hohider, 574 F.3d at 183 (“The Teamsters framework was judicially promulgated as a method of proof for pattern-or-practice claims brought by the government under Title VII, as that statute authorizes—it provides a means by which courts can assess whether a particular form of statutorily prohibited discrimination exists, just as the McDonnell Douglas framework does for individual claims of disparate treatment.”); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 356 (5th Cir.2001) (indicating the “Teamsters method of proof [is] an independent method of proof’); Davoll v. Webb, 194 F.3d 1116, 1148 (10th Cir.1999) (noting the Supreme Court has “recognized that the specifics of the McDonnell Douglas framework are inapplicable in certain factual situations, including when the government has brought a broad-based pattern and practice action” and citing to Teamsters, 431 U.S. at 358-60, 97 S.Ct. 1843); Segar, 738 F.2d at 1267-69 (discussing applicability of Teamsters’ method of proof as opposed to McDonnell Douglas to pattern- or-practice claims).
The Intervenors’ proof in this case, as in most pattern-or practice cases, was in fact statistical. Thus, the City’s method of proof was required to be directed toward those statistics. The majority’s classification of these differences in method proof as dictum and its choice not to apply Teamsters’ and thus be satisfied by the City’s facially neutral evidence, give no response to Intervenors’ statistics that show a clear pattern and practice of discrimination. Whatever the proof, under Teamsters, the City was obligated to defeat it. Any other argument is contrary to the law of this Circuit and the Supreme Court.
V. Applying Teamsters’ the City Failed to Meet Its Burden
In this case, there is no dispute that the Intervenors’ claim alleges that the New York City Fire Department engaged in a pattern-or-practice for decades that led to black and other minority firefighters being severely underrepresented in the Department. See Dist. Ct. Op. at 2; see also Maj. Op. at 77-78. As the district court stated, at the time this claim was filed, only 3.4% of the Department’s force was *111 composed of black firefighters despite black residents making up 25.6% of New York City’s population. Dist. Ct. Op. at 2. In other words, in a city of over eight million people, and out of a force with 8,998 firefighters, the Department only employed 303 black firefighters. Id. Perhaps most egregious is that in an otherwise esteemed Department, this “one persistent stain” has remained an essentially unchanged practice since at least the 1960s.[10] Id.
In accord with this pattern-or-practice case, the Intervenors presented copious statistical evidence. Id. at 6, 28. The district court found that the Intervenors met their burden,[11] id. at 28, but regardless, we need not reach that issue here, where, in fact, all parties agree the Intervenors met their prima facie case under Teamsters. Maj. Op. at 88. The only question that remains is whether the City defeated the statistical evidence proffered by the plaintiffs as insignificant or inaccurate. See Teamsters, 431 U.S. at 360, 97 S.Ct. 1843.
To carry its burden, the City proffered what the majority characterized as “a nondiscriminatory reason” for using the test. Maj. Op. at 88. The City’s response was that the test designers “did not intend to discriminate against any protected group,” Dist. Ct. Dkt. 359 at 5, and that there is no evidence that the Mayor and the Fire Commissioner intended to discriminate, id. at 6-7. The City also stated that the FDNY made recruitment efforts to increase minority hiring. Id. at 9; see also Maj. Op. at 88.[12] In essence, the City *112 stated that it had prepared the tests with “acceptable test development methods.” Id.
Applying Teamsters’ more difficult burden to the City’s offering, the district court deemed it deficient because the City’s evidence did not sufficiently attack the Intervenors’ statistics. Maj. Op. at 88-89. Thus, the lower court found that even if the City offered evidence sufficient for a McDonnell Douglas method of proof, it didn’t defeat the Intervenors’ evidence under Teamsters. The district court therefore granted summary judgment to the Intervenors on their pattern-or-practice case.
On appeal, the City tried to evade Teamsters’ heavy burden by arguing that its offer of proof was sufficient according to Raytheon Co. v. Hernandez, 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003). In Raytheon, the Supreme Court held that an employer’s “proffer of [a] neutral ... policy plainly satisfied its obligation under McDonnell Douglas to provide a legitimate, nondiscriminatory reason for the challenged action.” Id. at 53, 124 S.Ct. 513. However, Raytheon, unlike the present case, involved an individual’s non-class claim. Hence the City, in this pattern-or-practice case, tried to evade the demanding burden by claiming Teamsters is but a mere gloss for McDonnell Douglas. Having established that Teamsters is distinct and applies a more difficult burden for employers, I conclude the City was required to defeat the Intervenors’ proof as inaccurate or insignificant. Here it did not.
Moreover, where the City merely offered non-statistieal proof, in the face of overwhelming statistics proving its discriminatory intent, the City failed to “meet” the prima facie case. Here the City rebutted with affidavits, non-statistical proof, that its employees had no discriminatory motive. Although intent is crucial in Title VII cases, here where statistics are proof of the entity’s discriminatory intent,[13] the employer’s burden is to defeat those statistics. The employer must show that the statistics, which show intent, are incorrect. The employer may not merely counter that it had no ill-motives.
Moreover, it may not disprove the entity’s intent by merely stating the employees making the exam did not have a discriminatory motive. Instead, the statistics must be challenged. Even if non-statistical evidence is probative, the City did not present sufficient non-statistical evidence. Offering declarations that the designers of the Exams did not intend to create a discriminatory test in no sense goes to whether use of that test was discriminatory, as Intervenors proved. Even if the tests were not designed to discriminate against minorities, the use of them undisputedly did through the pass/fail and rank-ordering policies. Still, the majority tries to argue that the City’s method of proof was sufficient because it challenged “the inference of intentional discrimination arising from the Intervenors’ prima facie case.” Maj. Op. at 89.
As already stated, although intent is key in Title VII cases when dealing with pattern-or-practice cases, mere proof of nondiscriminatory motivations in the creation of a test are not the end of the intent analysis. As this Court has previously *113 stated, “[p]ersistent use of exams with disparate racial effects would support an inference of intentional discrimination if proper test construction were not even attempted.” Guardians Ass’n of the N.Y.C. Police Dep’t, Inc. v. Civil Serv. Comm’n, 630 F.2d 79 (2d Cir.1980). Thus, if wishing to rely merely on non-statistical proof, the City was still obligated to raise some facts explaining why its knowing continued use of those tests was not evidence of discrimination. As the district court stated, the trouble is not the existence of the Exams per se but the City’s policy or practice of subsequently using those Exams as pass/fail and rank-ordering devices. Dist. Ct. Op. at 38.
For this reason, I fully agree with the district court’s conclusion that “the subjective motives of the people who designed the Exams are only circumstantially relevant to the question of whether the City’s decision to use the Exams as screening and ranking devices was discriminatory.” Id. As hypothetically stated by the district court, a showing that the Exams were applied and reapplied with a nondiseriminatory intent would be “highly relevant to the City’s defense because it would support an inference that the City’s actual intent in enforcing [and reenforcing] the pass/fail and rank-ordering policies was to select the best candidates.” Id. at 38-39. But the mere initial motivation of the test designers doesn’t reach the issue of whether the City’s ex post use of those tests was discriminatory.
Additionally, although intent may be relevant to the question of imposing injunctive relief under a disparate impact theory, see Berkman v. City of New York, 705 F.2d 584, 595 (2d Cir.1983) (stating affirmative relief may be required where, for example, “the defendant has intentionally or egregiously engaged in a practice of discrimination”), that issue is not relevant at this initial stage under disparate treatment.[14] Where persistent use of the tegts bear out evidence of discriminatory intent and without more proof addressing the Intervenors’ statistics, the City cannot be said to have defeated the prima facie case.
Similarly, I find the fact that the City engaged in minority recruitment does not help to defeat the Intervenors’ case because all the potential black and Hispanic firefighters that were recruited would still have been subjected to the challenged procedures. As the district court stated, once the Intervenors made out the prima facie case that the City’s Exams discriminated against black applicants, proof of recruitment only proved “more blacks were taking the exam” and thus “more blacks were being illegally harmed, and the City’s evidence is relevant only to the scope of the injury, not its source.” Dist. Ct. Op. at 39. The majority cites to Washington v. Davis, 426 U.S. 229, 246, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), to argue affirmative efforts to recruit black officers negates the inference of intent, Maj. Op. at 89-90, but recruitment efforts simply do not satisfy the defendant’s burden to “meet” the plaintiffs case under Teamsters.
Instead, what matters under Teamsters is “(1) whether the City has policies of screening and ranking applicants based on how well they perform the required task, (2) what effect those policies have on black applicants, and (3) why the City decided to adopt those policies.” Dist. Ct. Op. at 38. *114 Because the evidence of recruitment has no bearing on the challenged use of the Exams, because the City does not provide a sufficient nondiscriminatory explanation where statistics showed a discriminatory result, and because any recruits would ultimately face the discriminatory Exams, this evidence cannot serve to show that Intervenors’ evidence was inaccurate or insignificant.
In this context, the City completely failed to meet Intervenors’ proof, as required by Teamsters, and it did not even approach raising a material question of fact about whether the Intervenors’ proof was inaccurate or insignificant on appeal. Thus, the City’s apparent disinterest in fixing what it has known to be a problem for more than four decades and its apparent disinterest in defending itself now according to the Teamsters standard is precisely the type of disregard the Teamsters test was meant to protect against. For the foregoing reasons, I am unable to agree with the majority’s conclusion that the City met its burden because the City may not meet its requirements by supplanting Teamsters with the McDonnell Douglas standard, and it is unreasonable to understand the language in Robinson and Reynolds as mere dicta. Accordingly, the Intervenors were entitled to summary judgment on their pattern-or-practice claim and I DISSENT from that part of the majority’s opinion that holds otherwise.

. Concluding the district court correctly applied Teamsters in its grant of summary judgment, I believe reassignment to a different district judge is unnecessary, however, I nonetheless concur with the majority opinion's conclusion in Part V.

. Pattern-or-practice claims originate from section 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a), which states where “persons [are] engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights” the Attorney General may bring a civil action.

. The majority claims this sentence incorrectly substitutes the word "statistics” for "proof.” Maj. Op. at 86 n. 13. However, I agree that Teamsters requires the defendant meet the Government's "proof” and have stated this point above. Rather than incorrectly replace "proof” with the word "statistics” this sentence only reveals the further logical deduction that the defendant must meet the plaintiff's statistical proof. It explains this point in the context of the paragraph’s syllogism. The syllogism proceeds from Teamsters as follows: 1) Under Teamsters a defendant has the "rebuttal burden of showing that the plaintiff's prima facie proof lacked significance,” a point with which the majority agrees, Maj. Op. at 86 n. 13; 2) In pattern-or-practice cases the plaintiff's proof is often composed of statistics, as was the case here. Ergo, 3) in such cases the defendant's obligation is to meet that proof, by defeating the meaning of those statistics. Thus, the use of "statistics” rather than "proof” in this context is a far cry from a conflation and instead is the result of a logical conclusion.

. In addition to these two main differences, to remedy the particular harm at which they are aimed, pattern-or-practice claims authorize a specific form of injunctive relief against an employer "to the full enjoyment of any of the rights secured by the statute.” Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 146-48 (2d Cir.2012) (citing 42 U.S.C. § 2000e-6) (internal quotation marks omitted). If the district court can fashion class-wide prospective relief, including "an injunctive order against continuation of the discriminatory practice, an order that the employer keep records of its future employment decisions and file periodic reports with the court, or any other order necessary to ensure the full enjoyment of the rights protected by Title VII.” Teamsters, 431 U.S. at 361, 97 S.Ct. 1843 (internal quotation marks omitted). Thus, pattern-or-practice plaintiffs seek different relief, unlike plaintiffs seeking individualized relief who assert "back pay, front pay, or compensatory recovery.” Reynolds, 685 F.3d at 203 (internal citation and quotation marks omitted).

. Although our earlier cases immediately following Teamsters applied both the McDonnell Douglas and Teamsters tests to pattern-or-practice cases without distinguishing them, see Ottaviani v. State Univ. of N.Y. at New Paltz, 875 F.2d 365, 370 (2d Cir.1989); Woodbury v. N.Y.C. Transit Auth., 832 F.2d 764, 768-69 (2d Cir.1987); Ste. Marie v. E. R.R. Ass'n, 650 F.2d 395, 397 (2d Cir.1981), this Court subsequently allayed any concerns over confusion between the two by definitively holding that the Teamsters framework sets distinct standards for pattern-or-practice claims. See Robinson, 267 F.3d at 159-60.

. This Court’s prescriptions in Reynolds and Robinson acknowledge the statistical bind that most employers will face. In these cases, the Court stated that challenging the statistical proof would be "[t]ypical[ ]” or the “basic” form of rebuttal. Reynolds, 685 F.3d at 203; Robinson, 267 F.3d at 159 (internal citation omitted). Thus, Reynolds and Robinson recognize that Teamsters allows for non-statistical evidence, but these cases also recognize *106 that the employer’s proof will rarely, if ever, be exclusively non-statistical. They notice that in most pattern-or-practice cases the plaintiff's proof will need to consist of statistics to show widespread discrimination, Teamsters, 431 U.S. at 339-40 n. 20, 97 S.Ct. 1843, and therefore the employer will have to answer that evidence with more than just non-statistical proof.

. For example, the court found plaintiffs proved their burden by showing that (1) the application of the pass/fail policy to Exam 7029 and Exam 2403 had a net effect of eliminating “between 607 and 684 black applicants who would not have failed the Exams but for the disparity” and also kept 144 black firefighters from gaining appointments they would have otherwise received, and (2) the rank-ordering of the examinations had the net effect of denying 112 black applicants "approximately 34 years' worth of wages and seniority that they would have received absent the policy's disparate effects.” Dist. Ct. Op. at 29-30.

. Beyond disregarding the clear distinction in the separate instances of these words and suggesting that the Supreme Court does not intend to use the word "defeat” when it uses it, the majority seems to misconstrue the law even when the plain meaning of these words reveals differences. The Oxford English Dictionary defines “defeat” as "To unmake, undo, do away with; to ruin, destroy” in comparison to "rebut” as "to provide a counter-argument to.” Oxford English Dictionary (online ed. March 2012).

. "Statistics showing racial or ethnic imbalance are probative in [disparate treatment cases],” Teamsters, 431 U.S. at 340 n. 20, 97 S.Ct. 1843, and although anecdotal evidence may be useful to bring "the cold numbers convincingly to life,” id. at 339, 97 S.Ct. 1843, statistical evidence is often necessary and often sufficient to establish a prima face case, id. See also Reynolds, 685 F.3d at 203 (stating "statistics alone can make out a prima facie case of discrimination in a pattern-or-practice suit if the statistics reveal a gross disparity in the treatment of workers based on race”) (internal citation, quotation marks and alterations omitted).

. In fact, as the district court found, the FDNY’s rate of black firefighters has actually gone down:
At the time of the [original] Vulcan Society litigation, blacks and Hispanics constituted 32% of the City’s population, but only 5% of the Department. In 1990, almost two decades later, blacks made up 29% of the City’s population, but only 4% of firefighters. In 2002, 25% of the City’s residents were black, compared to only 2.6% of its firefighters. Between 1991 and 2007, black firefighters never constituted more than 3.9% of the force, and by the time this case was filed in 2007, the percentage of black firefighters in the FDNY had dropped to 3.4%.
Dist. Ct. Op. at 16 (internal citations omitted).

. As previously stated, the Intervenors met their burden by showing that black candidates disproportionately failed Written Exams 7029 and 2043 because of the pass/fail and rank ordering policies. Dist. Ct. Op. at 29-30. Additionally, the district court noted that this was not the first time the City had been brought to federal court for its discriminatory use of firefighter examinations. Id. at 11 (citing Vulcan Soc’y of N.Y.C. Fire Dep’t, Inc. v. Civil Serv. Comm’n, 360 F.Supp. 1265, 1269 (S.D.N.Y.1973), affd in relevant part by 490 F.2d 387 (2d Cir.1973)). This showing was more than adequate to make out a prima facie case. Dist. Ct. Op. at 30 (citing Waisome v. Port Auth. of N.Y. & N.J., 948 F.2d 1370, 1376 (2d Cir.1991)).

.The City points us to more detailed evidence about its recruiting, Appellants’ Br. at 13-14, as well as an attrition plan meant to "reduce minority candidate dropouts during the application process. It also points to evidence in the record that “that both exams were constructed in accordance with "standard job analytic and test development procedures.” Id. at 19. The City also points us again to the increased EMT promotional exams. Id. at 20. Additionally, the City "also enlisted Columbia University’s School of International and Public Affairs to analyze and recommend improvements to its diversity initiative ("the Columbia Study”). The Columbia Study arose in conjunction with the FDNY’s "Strategic Plan” to rebuild and strengthen after 9/11, which identified enhancing diversity as one of its top six priorities.” Id. Finally, the City points us to proof that it created an FDNY High School for Fire and Life, which is a "99% minority high school [that] incorporates firefighting and EMT studies with a traditional educational curriculum.” Id. As Intervenors note, none of this evidence was called to the attention of the district court. Intervenors' Br. at 118-20. Even considering these facts, the City’s argument still fails.

. See Larson § 9.03[1], at 9-13 (stating that "[t]he ultimate burden in any disparate treatment case is to convince the fact finder that the defendant's actions were discriminatorily motivated” and that in a "pattern or practice suit” the plaintiff may depend on two forms of circumstantial evidence: 1) statistical proof "aimed at establishing the defendant's past treatment of the protected group” and 2) "testimony from protected class members”).

. Moreover, our Circuit has already determined in Ass’n Against Discrimination in Emp’t, Inc. v. City of Bridgeport, 647 F.2d 256, 280 n. 22 (2d Cir.1981) that "the requirement that an employer have discriminated 'intentionally' in order for the provisions of 706(g) to come into play means not that there must have been a discriminatory purpose, but only that the acts must have been deliberate, not accidental.”